# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1224-16T1

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

     Plaintiff-Respondent,

v.

E.S.,

     Defendant-Appellant,

and

F.W.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF F.W.,

     Minor.

_____

Submitted September 12, 2018 – Decided September 26, 2018

Before Judges Haas and Mitterhoff.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FG-02-0076-15.

Joseph E. Krakora, Public Defender, attorney for appellant (Carleen M. Steward, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Natasha C. Fitzsimmons, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Noel C. Devlin, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendant E.S.[1] appeals the trial court's November 7, 2016 judgment of guardianship that terminated her parental rights to her daughter, F.W., born in January 2014. Defendant contends that plaintiff New Jersey Division of Child Protection and Permanency ("Division") failed to prove each prong of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence. The Law Guardian supported termination before the trial court and, on appeal, joins the Division in urging us to affirm. Having considered the parties' arguments in light of the record and applicable legal standards, we affirm.

---

[1] Pursuant to Rule 1:38-3(d), we use initials to protect the confidentiality of the participants in these proceedings.

N.J.S.A. 30:4C-15.1(a) requires the Division to petition for termination of parental rights on the grounds of the "best interests of the child" if the following standards are met:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm[2] . . . ;
>
> (3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.

In June 2015, the Division filed a verified complaint to terminate defendant's parental rights and award the Division guardianship of F.W.[3] Judge

---

[2] "Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child." N.J.S.A. 30:4C15.1(a)(2).

[3] The Division also sought to terminate the parental rights of F.W.'s father. On August 15, 2016, F.W.'s father made an identified surrender of F.W to F.W.'s current resource parent.

William R. DeLorenzo, Jr., presided over the six-day guardianship trial, during which the Division presented four witnesses: caseworker Barbara Whalen; Dr. Michael Gentile; caseworker Debbie Gomez; and Dr. Robert Miller. Defendant presented testimony from a friend from Alcoholics Anonymous ("AA") and testified on her on behalf.[4] In addition, numerous documentary exhibits were admitted into evidence. On November 7, 2016, Judge DeLorenzo issued a fifty-seven page written opinion finding that the Division established by clear and convincing evidence the statutory grounds for terminating E.S.'s parental rights to F.W.

The evidence is outlined in detail in the judge's opinion. A summary will suffice here. E.S.'s history with the Division dates back to 2007. The Division has responded to referrals regarding domestic violence between E.S. and F.W.'s father, as well as E.S.'s mental health and erratic behavior. On May 9, 2014, the Division received a referral from the shelter where E.S. was residing with F.W., claiming that E.S. left F.W. unattended, threatened other people at the shelter with knives, and had accused F.W.'s father of sexually abusing her. The Division had previously responded to a referral regarding E.S.'s erratic behavior

---

[4] F.W.'s father also presented three witnesses at trial.

at the shelter. Based on concerns about E.S.'s mental health and ability to care for F.W., the Division emergently removed F.W. from E.S.'s care.

Upon removal from E.S., the Division took F.W. to Hackensack University Medical Center for an examination. Hospital staff discarded F.W.'s clothes because they smelled of urine and feces and determined that F.W. had severe eczema and a fever. The examination ruled out that F.W. was subjected to sexual abuse. F.W. was placed in a non-relative resource home, where she remains to date. On May 13, 2014, the Family Part granted the Division custody, care, and supervision of F.W.[5] The court ordered E.S. to comply with recommendations from a substance abuse evaluation and to submit to a psychiatric evaluation and comply with recommendations. The court also afforded E.S. four hours of supervised visitation per week.

Throughout the litigation, E.S. did not fully comply with her substance abuse and mental health treatments. E.S. completed two substance abuse treatment programs, as well as domestic violence counseling. Nonetheless, the evidence established at trial showed that E.S. suffered multiple relapses and at times refused to submit urine screens. Further, psychological and psychiatric

---

[5] On September 24, 2014, E.S. stipulated that she had abused or neglected F.W. by suffering from untreated mental health issues that posed a substantial risk of harm to F.W.

evaluations reflected that E.S. suffered from suicidal ideation, refused to take psychopathic medications, and had limited insight into her mental health conditions. Additionally, in May 2014, E.S. posted threatening and harassing statements about Division personnel on social media.

E.S. also attended her supervised visitation inconsistently. Through February 2015, the Family Part had suspended E.S.'s visitation pending the results of a psychiatric evaluation and E.S.'s compliance with treatment services and medication monitoring. E.S. attended the sessions in February and March 2015, but her participation became inconsistent in April 2015. E.S. did not visit F.W. between April 2015 and July 2015. Visitation was suspended from July 2015 to September 2015 because E.S. had relapsed.

Between September 2015 and December 2015, E.S. cancelled visits with F.W. at the Division because the visits were "too much" and it was too hard for her to maintain sobriety while visiting. Additionally, Division workers noted that when E.S. did attend visitation, E.S. did not stay for more than one-half of the allotted time for each session, E.S. would not change F.W.'s diaper, and F.W. was reluctant to go to E.S. Nevertheless, beginning in December 2015, E.S. attended supervised visitation on a consistent basis, changed F.W.'s diaper, and stayed for the full time provided.

A-1224-16T1

At trial, the Division's experts testified that E.S. was not fit to parent F.W. and had limited insight into her mental health conditions. Dr. Gentile diagnosed E.S. with post-traumatic stress disorder, borderline personality disorder, severe alcohol use disorder, and specific learning disabilities. Dr. Gentile testified that E.S. had been non-compliant with taking prescribed medications, had made suicide threats, and struggled with alcohol and drug use. Dr. Gentile opined that if E.S. failed to take her medication as prescribed, he would not recommend E.S. be reunited with F.W. even if she was otherwise in full compliance.

Likewise, Dr. Miller testified that E.S. was reluctant to acknowledge her mental health disorders, was non-complaint with medication and treatment, and posed a risk of exposing F.W. to harm. He noted that E.S.'s plan was for F.W.'s father to obtain custody of F.W., so that E.S. could visit F.W. Additionally, based on the bonding evaluations he conducted, Dr. Miller concluded that there was no secure bond between E.S. and F.W. In contrast, Dr. Miller concluded that there was a secure bond between E.S. and her resource mother, that the resource mother was E.S.'s psychological parent, and that separation of F.W. from her resource parent would cause F.W. significant harm. Based on his findings, Dr. Miller recommended that the Division seek termination of E.S.'s parental rights with the plan of adoption of F.W. by her resource parent.

 A-1224-16T1

At trial, E.S. testified that she was still pursuing substance abuse recovery and had started a new treatment program in March 2016. She also testified that she had requested parenting classes from the Division, which the Division did not provide. E.S. also testified that she did not intend to continue attending AA meetings and that she did not believe she needed her prescribed medications E.S. presented no expert testimony.

In his written opinion, Judge DeLorenzo found that the Division established each of the four prongs under N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence. With respect to prong one, the trial court found F.W.'s safety, health, and well-being were endangered by the parental relationship with E.S. based on E.S.'s failure to meet F.W.'s physical needs at the time of removal. The trial court further found that F.W. continued to be endangered by E.S.'s failure to appropriately deal with her mental health and substance abuse issues. Turning to prong two, the trial court found that E.S. was unable to eliminate the harm to F.W. because E.S. demonstrated only a superficial understanding of her parental deficits and alcohol dependence and because a delay in permanent placement would cause further harm to F.W. Under prong three, the trial court found that the Division provided reasonable efforts to help E.S. correct the circumstances that led to F.W.'s placement, including mental health and

substance abuse treatments, supervised visitation, and exploring and ruling out placement with F.W.'s maternal grandmother as an alternative to termination of parental rights. With respect to prong four, the trial court found that termination of parental rights would not do more harm than good to F.W. based on the conclusions from Dr. Miller's bonding evaluation.

Our scope of review on appeals from orders terminating parental rights is limited. In such cases, we will generally uphold the trial court's findings, so long as they are supported by "adequate, substantial, and credible evidence." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014). The decision should only be reversed or altered on appeal if the trial court's findings were "so wholly unsupportable as to result in a denial of justice." N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 511 (2004) (quoting In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002)).

Likewise, we must give substantial deference to the family court judge's special expertise and opportunity to have observed the witnesses firsthand and evaluate their credibility. R.G., 217 N.J. at 552-53. Moreover, as the fact finder, while the "trial judge is 'not required to accept all or any part of [an] expert opinion,' " he or she may "place[ ] decisive weight on [the] expert." In re Civil Commitment of R.F., 217 N.J. 152, 156, 174 (2014) (first alteration in original).

A-1224-16T1

Even where, as here, the appellants allege "error in the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom," deference must be afforded unless the judge "went so wide of the mark that a mistake must have been made." M.M., 189 N.J. at 279 (first quoting In re Guardianship of J.T., 269 N.J. Super. 172, 188-89 (App. Div. 1993); then quoting C.B. Snyder Realty, Inc. v. BMW of N. Am. Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)).

Guided by these standards, we conclude that Judge DeLorenzo's factual findings are amply supported by the credible evidence in the record, and his legal conclusions are unassailable. "It is not our place to second-guess or substitute our judgment for that of the family court, provided that the record contains substantial and credible evidence to support the decision to terminate parental rights." F.M., 211 N.J. at 448-49.

Here, the judge reviewed the evidence presented at trial, made detailed findings as to each prong of N.J.S.A. 30:4C-15.1(a), and concluded that the Division met by clear and convincing evidence all of the legal requirements for a judgment of guardianship. The judge's opinion tracks the statutory requirements of N.J.S.A. 30:4C-15.1(a) and accords with applicable case law. See, e.g., F.M., 211 N.J. at 447-54; N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 103-07 (2008); K.H.O., 161 N.J. at 347-63; In re Guardianship of

<u>D.M.H.</u>, 161 N.J. 365, 375-93 (1999).  We thus affirm substantially for the reasons Judge DeLorenzo expressed in his well-reasoned written opinion and, like the judge, find defendants' arguments unavailing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1224-16T1